NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2268
_____

ZURICH AMERICAN INSURANCE COMPANY;
NORTHERN INSURANCE COMPANY OF NEW YORK

v.

R.M. SHOEMAKER CO.; COUNTY OF MONMOUTH

v.

PENNSYLVANIA MANUFACTURERS ASSOCIATION
INSURANCE COMPANY

R.M. Shoemaker Company,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 2-12-cv-00873
(Honorable Harvey Bartle, III)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2013

Before: SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: March 27, 2013)

_____

OPINION OF THE COURT
_____

1

SCIRICA, *Circuit Judge*.

Insurance companies brought declaratory judgment actions to determine whether they must defend and indemnify their insured in a lawsuit pending in New Jersey state court. The district court granted summary judgment to the insurance companies, finding the commercial general liability policies between the insurance companies and the insured did not afford coverage under the circumstances of the underlying action. We will affirm.

I.

The County of Monmouth brought suit against R.M. Shoemaker Company in New Jersey state court (the "Underlying Action"), alleging Shoemaker, a construction contracting firm, faultily constructed an addition to the Monmouth County Correctional Institution in Freehold, New Jersey. Among other things, Monmouth alleges Shoemaker negligently supervised its subcontractor, thereby permitting the subcontractor to engage in willful misconduct and resulting in damage to both structural elements and personal property of the County Correctional Institution.[1] Monmouth alleges Shoemaker's negligence permitted water to intrude into the County Correctional Institution, reduced its structural integrity, and damaged interior property including "the electrical systems, the suspended acoustic tile ceilings and miscellaneous equipment."

Zurich American Insurance Company ("Zurich") and Northern Insurance

---

[1] The contract between Monmouth and Shoemaker provided that Shoemaker was responsible for the "construction means, methods, techniques, sequences and procedures" associated with "all portions of the Work under the Contract," and was obligated to "[c]oordinate, manage, inspect and supervise all phases" of that work.

Company of New York ("Northern") sought a declaratory judgment in the United States District Court for the Eastern District of Pennsylvania that they were not required to defend or indemnify Shoemaker, their insured, in the Underlying Action. Shoemaker served a third-party complaint against another of its insurers, Pennsylvania Manufacturers Association Insurance Company ("PMA"), and sought declaratory judgments that Zurich, Northern, and/or PMA had the duty to defend and indemnify Shoemaker in the Underlying Suit.[2]

The commercial general liability policies between Insurance Companies and Shoemaker use the same language, and only provide coverage for property damage caused by an "occurrence." The term "occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Insurance Companies moved for summary judgment under Fed. R. Civ. P. 56. Finding Pennsylvania substantive law governed the dispute, the district court held Insurance Companies were not required to defend Shoemaker because Monmouth's allegations in the Underlying Action did not arise from an "occurrence" as the Pennsylvania Supreme Court has construed that term. Shoemaker appeals and seeks to certify this case to the Pennsylvania Supreme Court. We will affirm the judgment of the district court.[3]

---

[2] Zurich and Northern (plaintiffs-appellees) as well as PMA (third-party defendant-appellee) are hereafter referred to as "Insurance Companies" for ease of discussion.
[3] The district court had jurisdiction of the original action under 28 U.S.C. § 1332(a)(1) and supplemental jurisdiction of Shoemaker's third-party complaint under 28 U.S.C. §

II.

This case involves the intersection of two Pennsylvania Supreme Court cases construing what may constitute an "occurrence." In *Kvaerner*, the court held an insurance company was not required to defend its insured against claims of faulty workmanship because such claims were not sufficiently fortuitous to constitute an accident. 908 A.2d at 899. Insurance Companies argue that since Monmouth's allegations amount to claims of faulty workmanship, they cannot be required to defend the suit. But in *Donegal Mutual Insurance Company v. Baumhammers*, the court held an insurance company may be required to defend its insured against claims arising from the intentional acts of a third party, at least where the insured's negligence enabled the third party's actions. 938 A.2d 286, 293 (Pa. 2007). Shoemaker contends that since its negligent supervision facilitated its subcontractor's willful misconduct, *Baumhammers* dictates that Insurance Companies must defend Shoemaker in the Underlying Action.

Shoemaker oversimplifies *Baumhammers*, contending it stands for the proposition that an "occurrence" has taken place whenever the insured's negligence leads to a third

---

1367. *See In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1238 (3d Cir. 1994) ("We hold that the additional non-diverse counterclaim defendants do not destroy diversity jurisdiction in the . . . action because there is complete diversity of citizenship between the originally named parties."). We review the interpretation of an insurance policy *de novo*. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). The court first looks to the language of the insurance policies to determine in which instances they provide coverage, and then examines the underlying complaint "to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." *Id.* at 896-97. If coverage is triggered, "the insurer has a duty to defend . . . . Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." *Gen.*

party's willful misconduct. *Baumhammers*' holding actually hinged upon the randomness

of the third party's misconduct—a shooting rampage, perpetrated by Richard

Baumhammers—from the perspective of the insured, his parents. *Id.* at 288. The families

of the shooting victims brought suit against Richard's parents, alleging the parents were

negligent in permitting Richard to have a gun and failing to procure mental health

treatment for him. *Id.* at 288-89. The Pennsylvania Supreme Court held that Donegal

Insurance—which insured the parents under a general liability policy similar to the

present case—was required to defend the parents against the victims' suits. *Id.* at 293.

The court explained:

> The extraordinary shooting spree embarked upon by Baumhammers
> resulting in injuries to Plaintiffs cannot be said to be the natural and
> expected result of Parents [sic] alleged acts of negligence. Rather,
> Plaintiffs' injuries were caused by an event so unexpected, undesigned and
> fortuitous as to qualify as accidental within the terms of the policy. Because
> the alleged negligence of Parents resulted in the tragic accidental injuries to
> the individual plaintiffs, Donegal is therefore required to defend Parents.

*Id.* As *Baumhammers* indicates, the crucial inquiry dictating whether a general liability

insurer must defend its insured under an occurrence-based policy is whether an event was

sufficiently fortuitous from the perspective of the insured to qualify as an "occurrence."

*See id.* at 292 ("An injury . . . is not 'accidental' if the injury was the natural and expected

result of the insured's actions.").

Kvaerner and cases following it make clear that faulty workmanship under a

contract is not sufficiently fortuitous to qualify as an "occurrence." In *Kvaerner*, a steel

company brought suit against Kvaerner for breach of contract and breach of warranty,

---

*Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997) (citation omitted).

alleging a coke oven battery Kvaerner designed and built was damaged and failed to meet contract specifications. 908 A.2d at 891. In determining that Kvaerner's insurer did not have to defend the suit, the Pennsylvania Supreme Court explained that "[t]he key term in the ordinary definition of 'accident' is 'unexpected.' This implies a degree of fortuity that is not present in a claim for faulty workmanship." *Id.* at 898. Therefore, the court held

> the definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.

*Id.* at 899 (footnotes omitted). The court further rationalized this rule, stating that such policies cover "tort liability for physical damages to others and not . . . contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." *Id.* at 899 n.10 (quoting *Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971)).

The Pennsylvania Superior Court expanded upon *Kvaerner* in *Millers Capital Insurance Co. v. Gambone Brothers Development Co.*, 941 A.2d 706 (Pa. Super. Ct. 2007). The analysis in *Gambone* is apposite because of its factual similarity to the present case. *See also Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (stating a federal court should not disregard the opinion of a state's intermediate appellate court unless convinced by persuasive data that the state's supreme court would decide differently). *Gambone* specifically rejected the argument that faulty workmanship by a

6

subcontractor may constitute an "occurrence" or "accident" from the perspective of the contractor. 941 A.2d at 715. *Gambone* further noted that insurance coverage and defense was precluded for "natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship," since such acts, like faulty workmanship, were not sufficiently fortuitous. *Id.* at 713. Moreover, in *Nationwide Mutual Insurance Co. v. CPB International, Inc.*, we relied in part on *Gambone* to predict the Pennsylvania Supreme Court would not require a general liability insurer to defend an action arising out of a contract dispute—even if the plaintiff in the underlying action asserted consequential damages. 562 F.3d 591, 597 (3d Cir. 2009).

*Kvaerner* and *Gambone* control the outcome of this dispute. Faulty workmanship—whether caused by the contractor's negligence alone or by the contractor's negligent supervision, which then permitted the willful misconduct of its subcontractors—does not amount to an "accident" or "occurrence." *See Bomgardner v. State Farm Ins. Co.*, Civ. No. 10-1287, 2010 U.S. Dist. LEXIS 96379, at *11-12 (E.D. Pa. Sept. 14, 2010) (stating *Gambone* stands for the proposition that "faulty workmanship, whether the fault of the insured or a subcontractor" does not constitute an occurrence). Nor does a foreseeable act like the subsequent water infiltration into the structure. *See Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) ("Faulty workmanship, even when cast as a negligence claim, does not constitute [an occurrence]; nor do natural and foreseeable events like rainfall."); *Nationwide Mut. Ins. Co.*, 562 F.3d at 596 (finding no insurance coverage because consequential damages were "too foreseeable to be considered an accident"). Monmouth's allegations do not

present the requisite fortuity to qualify as an "occurrence."[4]

### III.

Because Pennsylvania law dictates the outcome here, we will affirm the judgment of the district court and deny Shoemaker's motion for certification to the Pennsylvania Supreme Court. Insurance Companies are not required to defend or indemnify Shoemaker in the Underlying Action because the faulty workmanship on which Monmouth's claims are based does not constitute an "occurrence" triggering the protections of the policies between Insurance Companies and Shoemaker.

---

[4] A more difficult question may be presented when a plaintiff sues a defendant for faulty workmanship without an underlying contract between the parties (such as when the plaintiff sues a subcontractor directly). *See, e.g.*, *Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co.*, 557 F. Supp. 2d 502, 515 (D.N.J. 2008) (finding the existence of a contract crucial to the question of whether there has been an "occurrence," since where there is a contract, "it can hardly be said that the insured's failure to perform up to its own bargained-for, self-imposed standards was fortuitous from the insured's point-of-view"); *Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co.*, 735 F. Supp. 2d 150, 158 (D.N.J. 2010) (finding there is an occurrence where there is no contract between the parties and the plaintiff in the underlying action alleges the defendant negligently manufactured products in violation of industry standards). But this is not such a case. Monmouth's claims in the Underlying Action are entirely based on Shoemaker's allegedly faulty workmanship in the execution of the construction contract. Since this case requires a straightforward application of *Kvaerner* and *Gambone*, we needn't reach the issue of whether faulty workmanship constitutes an "occurrence" in the absence of a contract between the relevant parties.