## FREDERICK MUTUAL INSURANCE CO.

v.

## Suhrob AHATOV, et al.

## CIVIL ACTION NO. 15–2285

United States District Court,
E.D. Pennsylvania.

Signed 04/04/2017

Michael F. Nerone, Pion, Nerone, Girman, Winslow & Smith, P.C., Philadelphia, PA, for Frederick Mutual Insurance Co.

Celia Ann Rooney, Michael T. Rooney, Rooney & Rooney, Philadelphia, PA, Kevin L. Connors, Connors Law LLP, Exton, PA, Jeffrey H. Schervone, Hill Wallack LLC, Michael Kevin Martin, Hill Wallack LLP, Yardley, PA, for Suhrob Ahatov, et al.

Michael Dubinsky, Richboro, PA, pro se.

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE, UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION

Plaintiff Frederick Mutual Insurance Company ("Plaintiff" or "Frederick") brings this action [1] against Suhrob Ahatov ("Ahatov"), Dilnuza Kabildjanova ("Kabild-

---

1. The Court consolidated Case No. 2:16–cv–02234 with the current case, Case No. 2:15–cv–2285, in response to a motion filed by Frederick. (Doc. No. 33.) In the earlier case, Case No. 2:15–cv–2285, Frederick brought a claim against AAA, Ahatov, Kabildjanova, Concept, Dubinsky, Tull, Kieran, and Metro,

specifically seeking a declaratory judgment that it had no duty to defend or indemnify Concept under the Frederick insurance policy in the underlying tort action. See Doc. No. 1. On December 18, 2015, Frederick filed a Motion to Dismiss Dubinsky as it was unable to

janova"), Kieran Cole Construction, Inc. ("Kieran"), J. Tull Mechanical ("Tull"), Concept Development Group, Inc. ("Concept"), AAA Brothers ("AAA"), Metro Impact, Inc. ("Metro"), and Michael Dubinsky ("Dubinsky") (collectively, "Defendants"), seeking a declaratory judgment that Frederick has no duty to defend or indemnify Concept or Dubinsky or any other person/entity with respect to the claims asserted by Ahatov and Kabildjanova in the underlying tort claim action.[2]

Presently before the Court is Plaintiff's Motion for Summary Judgment ("Pl. Mot.") (Doc. No. 59) and accompanying Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Br.") (Doc. No. 60); substantive responses with accompanying briefs of Defendants Dubinsky ("Dubinsky's Br.") (Doc. No. 67) and Ahatov and Kabildjanova ("Ahatov Br.") (Doc. No. 68); and Frederick's reply ("Pl. Reply") (Doc. No. 69). Defendant AAA has filed a non-substantive response stating that it does not oppose the relief requested by Frederick. (Doc. No. 66.) Defendants Kieran and Concept have not responded.[3]

---

2. The underlying action refers to the state tort personal injury claims brought by Ahatov and Kabildjanova against Concept, Dubinsky, and others in the Philadelphia Court of Common Pleas. See infra Section II.A.

successfully serve him. See Doc. No. 17. The motion was granted on March 21, 2016. Doc. No. 24. However, on January 15, 2016, Dubinsky's counsel appeared in the underlying tort action by tendering his defense and indemnification. See Doc. No. 3, 16–02234. Frederick claimed that it requested Dubinsky appear in the declaratory judgment action twice after this point, but Dubinsky never responded. (Id.) As such, Frederick filed a new declaratory judgment action, Case No. 2:16–cv–02234, specifically addressing Dubinsky's request for coverage. See Doc. No. 1, Case No. 2:16–cv–02234. Counsel has appeared and has presented his opposition to Frederick's motion. See Doc. No. 67. The two cases were consolidated on Frederick's motion on May 17, 2016. Doc. No. 33. The relief sought here applies to both cases.

3. Both Kieran and Concept were served but failed to retain counsel to offer any opposition. Kieran was served on May 15, 2015. See Doc. No. 6. A default judgment was entered on July 30, 2015 against it for a failure to file a timely responsive pleading. See Doc. No. 10 and accompanying default entry.

We expand briefly with respect to Concept as the relief sought has more significant implications for Concept given its status as the named insured under the Frederick Policy. The Supreme Court of the United States has confirmed that "[i]t has been the law for the better part of two centuries ... that a corporation may appear in federal courts only through licensed counsel." Rowland v. California Men's Colony, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). The record reveals that Concept has not obtained counsel to appear in this case.

We note that Concept's principal (Michael Friedman) was properly served on November 6, 2015. See Doc. No. 15. Concept failed to file a timely response or pleading leaving Frederick to file a Motion for Entry of Default Against Defendant Concept. See Doc. No. 18. The record next shows a letter from Friedman to the Court, docketed on March 9, 2016, explaining that he was only recently informed about the case (from Frederick's counsel) and requested time to obtain counsel. See Doc. No. 20. On that same day, the Court denied Frederick's motion and instructed Concept to notify the Court within 20 days of that order "that counsel has been retained to represent [the] corporation." Doc. No. 21. On April 25, Friedman sent a letter to the Court explaining that he was unable to retain representation "due to [his] extremely limited financial resources." Doc. No. 28. On May 4, 2016, the Court sent a letter to Friedman providing:

> Please be advised that I am unable to give you any advice or guidance concerning this case. I will tell you that you have been properly served, therefore, Concept Development Group, Inc. is a party to, and will be bound by the results in the case before me. Because Concept Development is a corporation, you cannot proceed in this case without the representation of an attorney. Your interests would be best served by retaining legal counsel.

Doc. No. 29. Despite the notice, Concept failed to retain counsel. We conclude that

Upon consideration of the materials presented and the extensive oral argument held on March 17, 2017, and for the reasons set out within this memorandum, we grant Plaintiff's motion for summary judgment.

## II. FACTUAL AND PROCEDURAL HISTORY

We set out here the relevant proceedings leading up to the current litigation. We start with a brief discussion of the pending state action in the Philadelphia Court of Common Pleas; we then move to consider the worker's compensation proceedings and end with a discussion of the particulars of this motion.

### A. Philadelphia Court of Common Pleas Case

The present action seeking declaratory judgment is directly related to a pending state court action in the Philadelphia Court of Common Pleas, *Ahatov et al. v. Kieran Cole Construction Inc., et al.*, Case No. 140900267 (Pa. Com. Pl.) (hereinafter, the "Phila. Suit"). There, Ahatov and Kabildjanova (Ahatov's wife) assert tort claims arising out of a work site injury on February 12, 2013 suffered by Ahatov at a construction site located at 2301 Montrose Street, Philadelphia, Pennsylvania. *Phila. Suit*, Compl. at ¶¶ 9, 14.

On January 13, 2013, Dubinsky had purchased the property from Metro. (Dubinsky Br. at 2.) Dubinsky then hired Concept as the general contractor to manage the construction of a house on the property. *See* Doc. No. 59–5, Pl.'s Exh. E, Building Agreement Between the Owners and the Contractor on Fee Plus Cost of Labor and Materials ("Builder's Agreement"). While the Builder's Agreement states that the matters were agreed upon on January 15, 2013, the document was not executed until August 7, 2013. (*Id.*) In any event, Concept promptly began work after January 15. By early February, Concept hired Tull, Ahatov's employer, as the HVAC contractor. *Phila. Suit*, Compl. at ¶ 4, 11. On February 12, 2013, Ahatov suffered a fall through an "unguarded hole" on the first floor to the concrete basement floor, sustaining serious injuries. (*Id.* at ¶ 14.) On September 1, 2014, after retaining counsel, Ahatov and Kabildjanova filed the underlying state action naming Kieran, Tull, Concept, AAA, Metro, Dubinsky, and John Doe A–J and John Doe Corporations A–J for (1) a failure to carry adequate workers' compensation insurance, (2) negligence at the construction worksite, and (3) loss of consortium by Kabildjanova. (*Id.* at ¶¶ 2–8, Count I, Count II, and Count III.) We understand this case to be awaiting trial.

### B. Worker's Compensation Benefits Proceeding

On January 8, 2014, Ahatov filed a petition for worker's compensation benefits asserting that Concept was his employer at the time of the accident. *See* Doc. No. 59–2, Pl.'s Exh. B, Claim Petition for Benefits from Uninsured Employer and the Uninsured Employers Guaranty Fund ("W.C. Claim"). The matter was heard and on August 25, 2015, a final decision was rendered, holding that Concept was Ahatov's "statutory employer" at the time of the accident and that Concept was therefore obligated to pay Ahatov's worker's com-

---

under these circumstances and when supported by the proper authorities (*see* Fed. R. Civ. Pro. 56(e)), the Court may enter summary judgment against it. We cannot allow Concept's claimed "lack of resources" to preclude Frederick from having its motion considered. *Sync Labs LLC v. Fusion Manufactur-* *ing,* 2014 WL 2601907, at *4 (D.N.J. June 11, 2014); *Flynn v. Thibodeaux Masonry, Inc.,* 311 F.Supp.2d 30, 37 (D.D.C. 2004). We add that here, the critical question of whether Frederick has a duty to defend and/or indemnify Concept was fully briefed and argued by counsel for Ahatov and Dubinsky.

pensation benefits if Tull did not. *See* Doc. No. 59–3, Pl.'s Exh. C, Worker's Compensation Decision Rendered ("W.C. Decision"). As neither Concept nor Tull carried worker's compensation insurance on the date of the injury, the Uninsured Employers Guaranty Fund became secondarily liable. (*Id.* at ¶¶ 13–14.) The decision was not appealed.

## C. Current Litigation

At the time of the incident, Concept and only Concept was the named insured on the Contractors Special Policy issued by Frederick. *See* Doc. No. 59–4, Pl.'s Exh. D, Contractors Special Policy ("Policy"). The Policy was purchased for a "one-shot" construction project and was issued for one year with an inception date of January 9, 2013. *See* Doc. No. 67–4, Def. Dubinsky's Exh. B, Builders Risk Coverage Declarations. Upon the filing of the underlying state action, Concept tendered its defense and indemnity to Frederick. Frederick accepted the tender with a Reservation of Rights. *See* Doc. No. 60. Dubinsky also tendered to Frederick but Frederick rejected the tender asserting that it had no duty to defend or indemnify. *See* Doc. No. 3, Pl.'s Exh. A, Case No. 2:16–cv–02234. Frederick now seeks an affirmation by way of declaratory judgment filed on April 27, 2016. *See* Doc. No. 1. Specifically, Frederick seeks the entry of an order declaring that it has "no duty or obligation to defend [or indemnify] Defendant Concept [or Defendant Dubinsky] and/or any other person or entity under the Policy with respect to claims asserted by Defendants Ahatov and Kabildjanova in the underlying action." Doc. No. 1; Doc. No. 1, Case No. 2:16–cv–02234.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that, if accepted, "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. (*Id.*)

 Under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). "Thus, on a summary judgment motion a court can determine, as a matter of law, whether a claim is within a policy's coverage or is barred by an exclusion." *Verticalnet, Inc. v. U.S. Specialty Ins. Co.*, 492 F.Supp.2d 452, 456 (E.D. Pa. 2007) (*citing Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646, 651 (1995)). Courts in these cases interpret coverage clauses broadly "to afford the greatest possible protection to the insured" and interpret policy exceptions narrowly against the insurer. *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 498 n. 7 (3d Cir. 2002) (*quoting Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747, 750 (1981)).

With respect to non-movants who fail to respond to a motion for summary judgment, Federal Rule of Civil Procedure 56(e) explains that the court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." The 2010 Advisory Committee Notes to subdivision (e) states that:

[S]ummary judgment cannot be granted by default even if there is a complete

failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

 The Declaratory Judgments Act may be invoked by parties to an insurance contract to interpret their obligations under the contract. *General Accident Ins. Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997). "[The] first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." (*Id.*) (internal citations omitted). In the context of this declaratory judgment action, Frederick must convince the Court that its contractual coverage precludes the defense and indemnity of Concept and Dubinsky.[4]

## IV. DISCUSSION

Frederick makes two principal arguments. First, it asserts that the following three exclusions in the Policy between Frederick and Concept bar coverage for Concept: (1) exclusion 11, which bars coverage for bodily injury of an employee that occurs in the course of employment; (2) exclusion 12, which bars coverage for bodily injury that should be covered under workers' compensation insurance; and (3) the cross-liability exclusion. (Pl. Br. at 9.) Second, it asserts that Dubinsky is also not owed coverage under the Frederick Policy as it is not an insured, an "additional insured", or an insured under the Contractual Liability Coverage provision.

### A. The Policy

In this section we set out the relevant provisions that fit within the Policy, which the parties agree was in full force and effect on February 12, 2013 when Ahatov suffered his fall. We have reviewed the Policy as it pertains to Frederick's obligations to Concept, its named insured, and also to Dubinsky who claims coverage. As applicable here, we pay particular attention to those "Commercial Liability Coverage Section[s]" for "Bodily Injury Liability/Property Damage Liability" and "Personal Injury/Advertising Injury Liability." The "Bodily Injury Liability/Property Damage Liability" coverage provides a commitment by Frederick to "pay all sums which an 'insured' becomes legally obligated to pay as 'damages' due to 'bodily injury' or 'property damage' to which this policy applies." Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 13. Under the "Personal Injury/Advertising Injury Liability" coverage, Frederick commits to "pay all sums which an 'insured' becomes legally obligated to pay as 'damages' due to 'per-

---

4. With respect to Concept, we note that it failed to obtain counsel and respond to the summary judgment motion in a timely manner. In accordance with Rule 56(e)(1), the Court provided additional time for Concept to show cause as to whether Frederick's motion was unopposed and whether Frederick was entitled to the relief requested. *See* Doc. No. 61. As Concept failed again to appear in this case through counsel and to respond to the summary judgment motion, the Court holds the discretion to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. Pro. 56. For the reasons discussed in this Memorandum Opinion, we grant Frederick's motion. In so doing, we take into account the robust opposition presented by Ahatov—the party who has the most significant interest in seeing that Frederick's motion is denied.

sonal injury' or 'advertising injury' to which this insurance applies." (*Id.* at 14.) In its definitions section, the Policy sets out clearly the differences between bodily injury, personal injury, and advertising injury. It defines bodily injury as "bodily harm, sickness, or disease sustained by a person and includes required care and loss of services." (*Id.* at 9.) It defines personal injury as "injury (other than 'bodily injury', 'property damage' or 'advertising injury') arising out of one or more of [a few] offenses[,]" including "oral or written publication of material[,]" "false arrest, detention, or imprisonment[,]" and "malicious prosecution." (*Id.* at 11.) Advertising injury is defined as "injury (other than 'bodily injury', 'property damage', or 'personal injury') arising out of one or more of [a few] offenses[,]" including "oral or written publication of material[,]" "misappropriation of advertising ideas or style of doing business[,]" and "infringement of copyright, title, slogan, trademark, or trade name." (*Id.* at 9.) It is clear from an examination of these Policy provisions that the circumstance here is neither personal injury nor advertising injury, but rather bodily injury.

Returning to the bodily injury liability coverage, payment for this kind of injury is excluded "if it occurs [to an "employee"] in the course of employment by the "insured". (*Id.* at 19.) The Policy goes on to articulate that benefits are not available for any consequential injury to a spouse of an injured employee. (*Id.*) The exclusion continues to articulate that it "applies where the 'insured' is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse the third party for 'damages' arising out of [a bodily injury occurrence]." (*Id.*) Similarly, the exclusion provides that Frederick does not pay for bodily injury where the "benefits are provided or are *required to be provided* by the 'insured' under workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law." (*Id.*) (emphasis added). Frederick also notes the cross-liability exclusion in the Policy that precludes coverage for bodily injury to an insured. (*Id.* at 3.) We accept that Concept, as argued by Ahatov, believes that these exclusions do not apply. For the reasons we have set out within, we do not agree with Ahatov on this point as we find the language of the Policy to be straightforward, clear, unambiguous, and enforceable as written.

Next, the relevant provisions raised by Dubinsky, who is seeking coverage, are the "Additional Insured Owners, Lessees, or Contractors (Automatic Status)" provisions, the "Contractual Liability" provisions, and the "Exclusions That Apply to Bodily Injury, Property Damage, Personal Injury, and/or Advertising Injury." The "Additional Insured Owners, Lessees, or Contractors (Automatic Status)" coverage provides that an additional insured may be added to the insured's Policy when the insured and a person or organization have agreed in a "written contract or agreement that such person or organization be added to [its] policy as an additional insured." (*Id.* at 4.) The "Contractual Liability" coverage is offered as supplemental coverage and commits Frederick to pay for bodily injury liability assumed in a contract or agreement "under which [the insured] assume[s] tort liability to pay 'damages' because of 'bodily injury' ... Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." (*Id.* at 14.) However, this grant of coverage is an exception to the Policy's contractual liability exclusion, which provides that Frederick is not committed to paying for bodily injury liability "which is assumed by the 'insured' under a contract or an agreement." (*Id.* at 17.) Under the Policy, this exclusion does not apply to situations "covered under Contractual Liability Coverage [the supple-

mental coverage], provided that the 'bodily injury' ... occurs after the effective date of the contract or agreement." (*Id.*) We accept that Dubinsky believes that he is owed coverage under these provisions. However, for the reasons we have set out below, we find that the Policy does not include coverage for Dubinsky.

## B. Whether Coverage Is Owed to Concept Under The Policy

In this section, we analyze whether the Frederick Policy provides coverage to Concept. We begin by setting out Frederick's arguments for why coverage is not owed to Concept, examine Ahatov's defenses, and provide our analysis of the issue. We ultimately find that Concept is not covered under the Policy.

### 1. Frederick's Position

Frederick argues that coverage is not available under the Policy for the benefit of an employee, here Ahatov, where the Policy "clearly and unambiguously bar[s] coverage from applying where the insured is the employer of the plaintiff and/or if the insured was required to provide worker's compensation benefits to the plaintiff by law." (Pl. Br. at 9.) Frederick specifically points to exclusion 11, exclusion 12, and the cross-liability exclusion of the Policy. Exclusions 11 and 12 provide in relevant part:

11. "We" do not pay for:
 a. "bodily injury" or "personal injury" to an "employee" of the "insured" if it occurs in the course of employment by the "insured", or
 b. "consequential injury" to a spouse, child, parent, brother, or sister of such injured "employee"
 This applies where the "insured" is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for "damages" arising out of paragraph 11.a. or 11.b. above.

This exclusion does not apply to liability assumed by the "insured" under a contract covered under Contractual Liability Coverage.

12. "We" do not pay for "bodily injury" ... if benefits are provided or are required to be provided by the "insured" under a workers' compensation, disability benefits, or occupational disease, unemployment compensation, or like law.

Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 19. Frederick contends that Pennsylvania courts have recognized such exclusion clauses as valid, enforceable, and unambiguous. (Pl. Br. at 9.) Frederick points to *Inman v. Nationwide Mutual Insurance Company*, 433 Pa.Super. 534, 641 A.2d 329 (1994), a case in which an employee was injured during the course of her employment. *Inman* not only addressed the circumstances where the claimant had the benefit of workers' compensation but also made clear that coverage was excluded where the employer *should* have had workers' compensation benefits but did not. (*Id.*) The employee argued that her employer and the employer's general liability insurer were liable in the context of a third-party claim, where the employer failed to provide workers' compensation insurance. (*Id.*) Frederick notes that the insurer in *Inman* successfully asserted policy exclusions similar to the ones here as a complete bar to coverage for the third-party claim. (Pl. Br. at 10; citing *Inman*, 433 Pa.Super. 534, 641 A.2d 329.) *Inman* held:

To find otherwise would encourage employers to ignore their obligation to obtain workers' compensation insurance and rely on their general liability policy.... Such a result would create an imbalance in procurement of insurance and compound confusion and enforceability of the comprehensive basic social policy enunciated by the [Workers' Compensation] Act.

*Inman*, 641 A.2d at 331.[5] Frederick further argues that exclusion 12 has similarly been upheld by Pennsylvania courts due to the circumstance that benefits were "required to be provided." *See, e.g., State Auto Mutual Insurance v. Christie*, 802 A.2d 625, 626–28 (Pa. Super. 2002).

Frederick asserts that because Concept was Ahatov's statutory employer, it was obligated pursuant to the Pennsylvania Workers' Compensation Act to provide workers' compensation benefits to Ahatov. (Pl. Br. at 11.) Frederick points to the Workers' Compensation Judge's decision issued on August 26, 2015, holding that Concept was "legally obligated pursuant to the Pennsylvania's Worker's Compensation Act to pay benefits to the Claimant, as the statutory employer of the Claimant." [6] (Pl. Br. at 12.) Frederick argues that because no appeal was filed, the decision by the Judge is final and that "[a]djudications by worker's compensation Judges in Pennsylvania are afforded collateral estoppel/*res judicata* effect, barring re-litigation of the issues decided in the worker's compensation forum by those same parties in a later civil action." (*Id.*; *citing Grant v. GAF Corp.*, 415 Pa.Super. 137, 608 A.2d 1047, 1055 (1992)). As such, Plaintiff argues that collateral estoppel applies here, "mandat-

ing application of the Exclusions which bar coverage here." (Pl. Br. at 13.)

Frederick contends that the cross-liability exclusion also excludes coverage to Concept. (*Id.*) The cross-liability exclusion provides: " 'We' do not pay for 'bodily injury' (or 'personal injury', if provided by the Commercial Liability Coverage) to an 'insured.' " (Pl. Br. at 4; *see* Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 3.) Plaintiff explains that the Frederick Policy defines an "insured" as including employees of Concept, as it provides: " 'Insured' also include: (h) 'your' 'employees', for acts within the scope of their employment by 'you' . . ." Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 10. Frederick argues that Ahatov's judicial admission that Concept was his employer in the Workers' Compensation Claim Petition, as well as the Judge's ruling that Ahatov was a statutory employee of Concept, "places [Ahatov] squarely within the Policy definition of an insured." (Pl. Br. at 13–14.) As such, Frederick argues that because Ahatov is an "insured" under the Policy, the cross-liability exclusion bars any coverage from being owed. (Pl. Br. at 14.)

### 2. Ahatov's Response and the Court's Analysis

We found Defendants Ahatov and Kabildjanovas' (hereinafter, "Ahatov") re-

---

**5.** Plaintiff cites to additional cases that resulted in the same conclusion. *See, e.g., State Auto. Mut. Ins. Co. v. Christie*, 802 A.2d 625, 626–28 (Pa. Super. 2002); *Nautilus Ins. Co. v. Gardner*, 2005 WL 664358 at **5–8 (E.D. Pa. March 21, 2005); *Scottsdale Ins. Co. v. City of Easton*, 379 Fed.Appx. 139, 145 (3d Cir. 2010).

**6.** The Judge's decision found Concept to be a "statutory employer" under Section 302(b) of the Workers' Compensation Act (*see* Doc. No. 59–3, Pl.'s Exh. C, *W.C. Decision*, at 20), which provides:

Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe[e] or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employee or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe[e] or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor[e].

sponse difficult to follow, with counsel taking a rather diffuse approach to presenting his defenses. Ahatov argues that the Policy is ambiguous and confusing and that it was a contract of adhesion that should construed only to provide coverage. He also asserts that the "statutory employer" defense does not apply to Dubinsky or Concept, and that Friedman (the owner · of Concept) and Dubinsky were actually parties to a joint venture and thus mutually and vicariously liable for injuries caused by the venture. We find these arguments unpersuasive.

### a. Ambiguous and Confusing

 Upon a careful reading of the Policy, and understanding its simple structure of providing coverage grants and then setting out exclusions, we conclude that these provisions related to workers' compensation (exclusions 11 and 12) and the cross-liability exclusion clearly and unambiguously preclude coverage to Concept. We begin, as we must, by acknowledging that: "[a]n insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion." *Erie Ins. Co. v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004). Fundamentally, the court must interpret the policy to "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *401 Fourth St., Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166, 171 (2004). The court must consider the terms as set out and if it finds the language clear and unambiguous, then it "must give effect to that language." *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 2012 WL 895451, at *4 (E.D. Pa. Mar. 16, 2012), *aff'd*, 519 Fed.Appx. 90 (3d Cir. 2013). The Third Circuit further · explains that "[e]xclusions from coverage contained in an insurance policy will be effective

against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (*citing Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 567 (1983)). An ambiguity exists "when the questionable term or language, viewed in the context of the entire policy, is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 365 (3d Cir. 2004) (*quoting Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). An ambiguous term must be "construed against the insurer, in favor of the insured." *Meyer*, 648 F.3d at 163–164. Where there is no ambiguity, the court must give full effect to the plain meaning of the policy language. *Id.*

 Frederick has accepted that it has the burden to prove the applicability of the relevant exclusions. We conclude that it has met this burden and has provided persuasive case law to support its position. The plain meaning of exclusion 11 precludes coverage for bodily injuries suffered by employees in the course of their employment by the insured. Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 19. It is undisputed that the "insured" in this context is Concept. While Ahatov was reportedly employed by Tull, the subcontractor, his entitlement to benefits, unfulfilled by Tull's failure to secure workers' compensation insurance, kicks up to Concept as the general contractor. *See* Doc. No. 59–3, Pl.'s Exh. C, *W.C. decision*. Further, Ahatov is the "employee" of Concept given his judicial admission in the Workers' Compensation Claim Petition and the Workers' Compensation Judge's ruling that he was Concept's statutory employee.[7] *See* Doc. No. 59–2 Pl.'s Exh. B, *W.C. claim*; Doc.

7. No appeal was filed in the workers' compensation case thus making the ruling final.

No. 59–3, Pl.'s Exh. C, *W.C. Decision.* Thus, under this exclusion, coverage is barred as Ahatov (the employee) was injured in the course of employment with the insured (Concept).

We also conclude that the plain meaning of exclusion 12 precludes coverage for bodily injury where, as here, the insured was *required* under the Pennsylvania Workers' Compensation Act to have workers' compensation insurance but failed to do so. Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 19. Concept is thus barred under this exclusion. *Inman* provides clear reasoning:

> To find otherwise would encourage employers to ignore their obligation to obtain workers' compensation insurance and rely on their general liability policy ... Such a result would create an imbalance in procurement of insurance and compound confusion and enforceability of the comprehensive and basic social policy enunciated by the [Workers' Compensation] Act.

*Inman*, 641 A.2d at 331. Pennsylvania courts have repeatedly recognized exclusions similar to exclusions 11 and 12 in the Policy to be valid, enforceable, and unambiguous. *See Inman*, 641 A.2d at 329; *Christie*, 802 A.2d at 626–28; *Gardner*, 2005 WL 664358 at **5–8; *Scottsdale Ins. Co.*, 379 Fed.Appx. at 145.

We also conclude that Frederick met its burden by establishing that the cross-liability provision clearly and unambiguously precludes coverage for bodily injury to an insured. The cross-liability exclusion provides: " 'We' do not pay for 'bodily injury' (or 'personal injury', if provided by the Commercial Liability Coverage) to an 'insured'." Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 3. The Policy defines an "insured" to include "(h) 'your' 'employees', for acts within the scope of their employment by 'you' ..." (*Id.* at 10.) Ahatov's judicial admission that Concept was his employer in the Workers' Compensation Claim Petition and the Workers' Compensation Judge's ruling that he was a statutory employee of Concept control here. *See* Doc. No. 59–2, Pl.'s Exh. B, *W.C. Claim*; Doc. No. 59–3, Pl.'s Exh. C, *W.C. Decision.* As an employee of Concept, Ahatov was an "insured" under the Policy. The cross-liability exclusion, therefore, precludes coverage to him for any bodily injury.

 Ahatov's response demonstrates his frustration that the Policy fails to provide Concept a benefit that he can use, even though the exclusions take into account that the workers' compensation regime has *already provided* him with substantial benefits—payment of his medical expenses and lost wages. He complains that there is no signature on the Policy, that it was not certified,[8] that some forms and endorsements set out in the Artisans Declarations are not dated or explained,[9] that paragraphs with comparable language are pages apart and presented in columns, that the pages are out of order, terms are undefined,[10] and that with respect to Fred-

---

"Adjudications by worker's compensation judges in Pennsylvania are afforded collateral estoppel/*res judicata* effect, barring re-litigation of the issues decided in the worker's compensation forum by those same parties in a later civil action." *Grant*, 608 A.2d at 1055.

**8.** Frederick supplemented the record with a certified copy of the Policy on March 24, 2017. *See* Doc. No. 73, Exh.'s 1–3.

**9.** The Artisans Declarations simply sets out the forms and endorsements which are con-

tained within the Policy. It does identify the dates of coverage.

**10.** Ahatov provides a list of terms that he believes do not have plain meaning in the Policy and argues that it is especially difficult for Friedman and Dubinsky to understand them as neither had English as their first language. (Ahatov Br. at 8–9.) This argument fails. Some of the terms listed are defined in the "Definitions" section of the policy—including, the terms "employee", "insured", and "additional insured." One of the "confus-

285

erick's briefing, there are just "too many pages, sections and subsections between clauses cited in the motion and brief ... that the plaintiff is now saying are related—and relieve it of giving Mr. Fri[e]dman what he paid for in premiums." [11] (Ahatov Br. at 11.) These complaints, however, fail to address the core issue that, as outlined in the Policy, coverage grants are *limited* and exclusions apply. Ahatov also asserts that Friedman did not understand that he was expected to have workers' compensation insurance or that he would be liable as a statutory employer. (*Id.*) This argument has no merit as coverage analysis is not determined based upon what the insured may have mistakenly believed. Friedman's ignorance of his workers' compensation obligation does not relieve him of his legal responsibilities. As explained in *Linn*, an unambiguous insurance policy will be given effect "irrespective of whether the insured read the limitations or understood their import." *Linn*, 766 F.2d at 760.[12] The insurer's duty is to set out in clear and unambiguous language

the coverage and exclusions in its policy, the insurer is under no obligation to anticipate the circumstances of each and every prospective insured. The policy must be construed based upon a consideration of the benefits to be provided to the insured with a focus on the availability of those benefits where other circumstances independent of the obligations of the insurer come into play. Such is clearly the situation here, where a policy meant to cover certain risks of contractors, facing an often hazardous environment of construction work, precludes coverage for the protection of workers as those workers have the benefit of the statutory workers' compensation scheme. It is right and proper that insurers should exclude any coverage for harm done to employees or their own insured where those parties are protected by having their wage loss and medical costs provided by the workers' compensation scheme. It may well be that there is some confusion on the part of the contractor or subcontractor who ignores their responsibility to obtain workers' compensation in-

ing terms," statutory employer, does not appear in the Policy. Regardless, we find the terms to be commonly understood, reasonably articulated, and reject the notion that their usage is to be dependent upon the subjective capabilities of the policy holder.

11. Ahatov argues that the Contractual Liability Coverage is also confusing and ambiguous but we reserve a fuller discussion on this provision to Section IV.B. We do, however, set out a few comments here. First, Ahatov fails to provide much (or clear) detail as to why or how the Policy provisions contradict each other. *See* Ahatov Br. at 10–11. While he states that the language of the Supplemental Coverage is contrary to the language of the exclusion, he gives no explanation as to how this is the case. *See id.* at 11. Second, Ahatov argues that the provisions are confusing because the paragraphs are pages apart and typed in columns but again, we fail to see how this establishes that the provisions are confusing and ambiguous. *See id.; see also Seidenberg v. Mutual Life Ins. Co. of New York*,

949 F.Supp. 269 (D.N.J. 1996), *aff'd*, 135 F.3d 766 (3d Cir. 1997) (noting, "[a]n insurance policy is not ambiguous, however, merely because it is complex.") Third, Ahatov asserts that there are undefined terms which contribute to the confusion but he does not state what terms are undefined. *See id.* We have explained in Section IV.B that the Contractual Liability Coverage is valid and enforceable.

12. We note that there were other potential remedies available to Ahatov and Concept here. Specifically, claims could have been pursued (given proper standing) against the insurance broker for not clarifying the coverage under the Policy. The broker presumably knew the Policy concerned a construction project and that workers' compensation insurance was required under the law. However, even if such clarification was given and Concept had acquired workers' compensation insurance, Ahatov would still only have received the benefits that he has already obtained from the UEGF.

surance coverage, which the law mandates. The contractor or subcontractor may not seek to transform the benefits of his commercial liability coverage to protect himself from the harm done to a third party to provide workers' compensation coverage merely because he has ignored his responsibility to obtain proper coverage. We will not convert this policy into that which Ahatov believes it should have been or wants it to be.

### b. Adhesion

 The Third Circuit explains that "insurance policies are often adhesion contracts prepared by the insurer on its own forms, [so] ambiguities in the policy should be resolved against the insurer and not against the policy holder." *Treasure Craft Jewelers, Inc. v. Jefferson Ins. Co. of N.Y.*, 583 F.2d 650, 652 (3d Cir. 1978). At the same time, the Court of Appeals makes clear that "the court should read policy provisions so as to avoid ambiguities, if the plain language of the terms of the contract permits." (*Id.*) The question of Friedman's status as a sole proprietor whose native language is not English and who could not afford to obtain legal counsel comes into play only with respect to the relationship between the parties. *See* Ahatov Br. at 13. However, the focus here is upon the clarity of the relevant policy language. (*Id.*) As discussed in the last section, we find the relevant Policy language clear and unam-

biguous and find that Ahatov has failed to establish otherwise.[13]

### c. Statutory Employer

Finally, we also reject Ahatov's argument, which he characterizes as workers' compensation immunity. (Ahatov Br. at 14.) Ahatov asserts that while the UEGF paid benefits to Ahatov because Tull and Concept did not hold workers' compensation insurance, UEGF now holds a lien for proceeds that are received from the underlying state suit. (Ahatov Br. at 14–15.) Ahatov contends that this is unfair because Tull and Concept should not benefit from a rule intended to protect injured workers. (*Id.* at 15.) Specifically, Ahatov finds it is unfair that Concept and Tull have to pay nothing to him and that the UEGF can take any proceeds that he receives in the underlying claim. (*Id.*) We find this argument unpersuasive. Pennsylvania has a policy in place to protect injured workers when employers fail to obtain workers' compensation insurance, and those benefits have afforded Ahatov over $200,000 in benefits from the UEGF.[14] Ahatov has failed to explain why the insurer, Frederick, which provides clear and unambiguous coverage with specific limitations, should pay a penalty for the misfeasance of the insured.

For the aforementioned reasons, we conclude that Frederick's policy precludes

13. Ahatov also unpersuasively argues that coverage is owed to Concept because Friedman had the "reasonable expectation" of coverage. However, as discussed earlier, we reject this argument because this case is not decided upon what the insured mistakenly believed to be true but rather what the Policy unambiguously states.

14. Ahatov makes one final argument that we will not discuss in detail. He asserts that the relationship between Dubinsky and Friedman was actually that of joint venturers and not

that of a property owner and general contractor. Contrary to counsel's statement at the oral argument that this theory was raised in the underlying state complaint, a review of the complaint shows otherwise. As the statute of limitations has passed on such a claim, and the workers' compensation judge already established that the relationship between the two was that of property owner and general contractor, we will not address this argument any further. We also fail to see how it effects our coverage analysis.

coverage to Concept for the underlying tort case.

## C. Whether Coverage Is Owed to Michael Dubinsky Under the Policy

We now consider whether the Frederick Policy provides coverage to Dubinsky. We begin by setting out Frederick's arguments for why coverage is not owed, examine Dubinsky's responses, and provide our analysis. We ultimately find that coverage is not available to Dubinsky for the underlying state court claims.

### 1. Frederick's Position

Frederick asserts that it has no duty to defend or indemnify Dubinsky. (Pl. Br. at 14.) Frederick first notes that Dubinsky is not a named insured and does not fall within any policy definition of an insured. (Id.; see Doc. No. 59–4, Pl.'s Exh. D, Policy, at 10–11.)

 Frederick then notes Dubinsky's argument that he should be deemed an "Additional Insured" under a policy amendment entitled: "Additional Insured Owners, Lessees, or Contractors—Automatic Status." (Pl. Br. at 14; Doc. No. 59–4, Pl.'s Exh. D, Policy, at 4.) Frederick points out, however, that this argument fails in that one can become an additional insured only if: ·

2. Under Definitions, the definition of **"insured"** is amended to include as an **additional insured** any person or organization for whom "you" are performing operations when "you" and that person or organization have **agreed in a written contract or agreement that such person or organization be added to "your" policy as an additional insured.**

(Id.) (emphasis added). Frederick argues that "the most basic requirement to obtain this status [additional insured] has not been satisfied here." (Pl. Br. at 14.) Frederick points to the Builder's Agreement, which sets out certain rights and obli-

gations between the parties but is silent on the question of whether Dubinsky has rights as an additional insured. (Id.) Frederick notes that the Builder's Agreement was not even executed until August 2013, some six months after the accident. (Pl. Br. at 14–15.) Frederick argues that there was no *written* contract in place at the time of the accident and thus Dubinsky does not qualify as an "additional insured." (Pl. Br. at 15.)

Frederick then considered the "Supplemental Coverage" of the Commercial Liability Coverage Section of the Policy, which provides:

**CONTRACTUAL LIABILITY**

1. We cover "bodily injury" . . . liability which is assumed under the following contracts or agreements:

 f. any part of any other contract or agreement relating to the conduct of "your" business . . . under which *"you" assume tort liability to pay "damages"* because of "bodily injury" . . . Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Doc. No. 59–4, Pl.'s Exh. D, Policy, at p. 14 (emphasis added). This supplemental coverage could be said to come into play if Concept assumed liability for damages based upon Dubinsky's conduct. This coverage, Frederick explains, is an exception to the Policy's Contractual Liability exclusion, which provides:

1. "We" do not pay for "bodily injury" . . . . liability which is assumed by the "insured" under a contract or an agreement.

This exclusion does not apply to:

 b. "bodily injury" . . . covered under Contractual Liability Coverage, provided that the "bodily injury" . . . occurs after the effective date of the contract or agreement.

Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at p. 17. Frederick contends that the supplemental coverage benefits only the insured (Concept), not the indemnitee (Dubinsky). (Pl. Br. at 16; *citing* 21–132 Appleman on Insurance Law & Practice § 132.3 ("To understand Exclusion 'b,' one must focus on the insured who assumes a contract liability. 'Assumption of Liability by the Insured' is the correct way to interpret and construe Exclusion 'b'.")) Frederick states that when the exclusion is applicable, it covers the insured's contractual liability, but because no coverage is owed to Concept, under the employee exclusion, "this provision has no application in this claim." (Pl. Br. at 16.)

Moreover, Plaintiff argues that even "if coverage was owed to Concept under the Contractual Liability provision, it would not apply here because the wording of the indemnity clause and the procedural posture of the claims preclude such an outcome." (*Id.*) Frederick asserts that the indemnity clause in the contract between Concept and Dubinsky does not require Concept, as an indemnitor, to provide a defense for Dubinsky. (*Id.*) The indemnity clause in the agreement provides: "The builders [Concept] shall indemnify the owner [Dubinsky] in respect of all claims, damages or expenses payable in consequence to any injury to any employee, workman, nominee, invitee, while in or upon the same premises. . . ." Doc. No. 59–5, Pl. Exh. E, Building Agreement Between the Owners and the Contractor on Fee Plus Cost of Labor and Materials ("Builder's Agreement"). Further, Plaintiff explains that the clause "only requires indemnification for liability imposed upon Dubinsky (the owner) for Concept's (the builder's) negligence—it does not impose upon Concept Development an obligation

to indemnify Dubinsky for Dubinsky's own negligence." (*Id.*) Frederick points to the *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1,4 (1991), where the Pennsylvania Supreme Court held that:

> The law has been well settled in the Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words or general import can establish such indemnification.

Frederick argues that because the Builder's Agreement contains no language whereby Concept agreed to indemnify Dubinsky for the Dubinsky's own negligence, "as a matter of law, the indemnity clause can only apply to require Concept Development to indemnify Dubinsky for liability imposed upon Dubinsky for Concept Development's negligence." (Pl. Br. at 17.) Plaintiff asserts that the underlying state action only includes claims for Dubinsky's direct active negligence, not claims seeking to impose liability upon Dubinsky vicariously for the conduct of Concept. (*Id.*) Frederick points out that all of the claims Ahatov asserts against Dubinsky are assertions of Dubinsky's direct negligence and not assertions seeking to hold him liable for Concept's negligence. (Pl. Br. at 18.) Accordingly, Frederick contends that indemnity is not owed to Dubinsky under the Builder's Agreement clause and thus, no coverage is owed under Frederick's Policy. (*Id.*)

### 2. Dubinsky's Response [15] and the Court's Analysis

Dubinsky rejects Frederick's argument. First, he asserts that Concept specifically purchased the Frederick Policy for the

---

15. Dubinsky "does not dispute the factual averments in the Motion regarding the terms, conditions and exclusions in the Policy at

issue in this matter. It is also undisputed that the Policy was in full force and effect at the

new construction project, which was identified in the Policy. (Dubinsky Br. at 3.) Dubinsky argues that he should be deemed an "insured" or an "additional insured" under the Policy because he was the record owner of the property when the Policy was issued, his property was the named property under the policy, and Concept agreed to fully indemnify him for any work at the site. (Dubinsky Br. at 3–4.) He asserts: "[b]ased on representations by CD, Mr. Dubinsky had an expectation of coverage, notwithstanding the failure of CD to formally list Mr. Dubinsky as an Additional Insured under the Policy." (Dubinsky Br. at 4.) We fail to see how the expectations Dubinsky may have had based upon its interactions with Concept imposes liability upon Frederick. We agree with Frederick that Dubinsky does not qualify as an "additional insured" under the Frederick policy.[16] The Frederick policy clearly provides that in order for a person to qualify as an "additional insured", there must be a "written contract or agreement [where] such person or organization [has been] added to 'your' policy as an additional insured." Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at 4. While Dubinsky

points out that the Builder's Agreement is a "written contract or agreement[,]" the evidence is uncontradicted that it was not signed until August 7, 2013, months after the accident, allowing Frederick to argue that there was no written contract in place at the time of the accident.[17] *See* Doc. No. 59–5, Pl. Exh. E, *Builder's Agreement.* In any event, the agreement clearly did not identify Dubinsky as an "additional insured" to the Frederick Policy. The fact that Dubinsky was the record owner of the property and reference was made to the property at the time of the application does not automatically establish coverage for Dubinsky as he was not explicitly added as an "additional insured" in the agreement as required by the Policy.[18]

██ Dubinsky next argues that at a minimum, he is owed a defense as the duty to defend is broader than the duty to indemnify. (*Id.*; *citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888 (2006)). We agree with Frederick that this argument "completely ignores the most fundamental requirement which triggers a duty to defend—that the party seeking a

time the incident occurred." (Dubinsky Br. at 3.)

16. While Dubinsky does not directly argue that he is an "insured" under the Policy, we note that the Policy lists nine different ways in which one can become an "insured" but none apply to Dubinsky. *See* Doc. No. 59–4, Pl.'s Exh. D, *Policy*, Contractor's Liability Coverage Section, Definitions, No. 8 "insured", at 10–11.

17. While this defense was not raised, we note that the oral agreement allegedly made on January 15, 2013 (which was later executed as the written Builder's Agreement on August 7, 2013) is not enough to qualify as a "written contract or agreement" as required by the Frederick Policy. The Third Circuit has held that while the argument may be made that the term "written contract or agreement" is ambiguous in that it could be interpreted to

mean "written contract or (any written or oral) agreement," the only reasonable interpretation is "written contract or (written) agreement" as the word "written" modifies both "contract" and "agreement". *Quincy Mut. Fire Ins. Co. v. Imperium Ins.* 636 Fed. Appx. 602, 605 (3d Cir. 2016). As the court explained, "[t]o read it otherwise would render 'written' meaningless." (*Id.*)

18. Dubinsky also contends that: "[s]o as to not render the Policy illusory, given that coverage to [Concept] was denied under the "Employee" exclusion, Mr. Dubinsky should be deemed an Additional Insured under the Policy and should be afforded coverage." (Dubinsky Br. at 4.) We find this argument meritless as Dubinsky has offered no authority to support such a statement. We suffice it to say that for the reasons mentioned earlier, Dubinsky does not qualify as an "additional insured" under Frederick's Policy.

defense is an insured under the Policy." *See* Pl. Reply at 3. The Third Circuit has held that under Pennsylvania law, "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage." *Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 238 (3d Cir. 2010). There is no duty to defend where the allegations in the underlying third-party complaint do not trigger coverage. (*Id.*) As the underlying state complaint fails to trigger coverage under the policy for Dubinsky, we find that Frederick does not have a duty to defend Dubinsky.

Finally, Dubinsky argues that Frederick was wrong to disclaim coverage for contractual liability. (Dubinsky Br. at 4.) He explains that in the Builder's Agreement, Concept agreed to secure insurance and indemnify him for any bodily injury claims that occurred during the construction of his home. (*Id.*) Dubinsky asserts that while Frederick argues the Builder's Agreement was executed after the incident occurred (and for this reason is invalid), the contract, "by its terms, confirms and ratifies the agreement between CD and Mr. Dubinsky entered into when the policy went into effect on January 9, 2013." (*Id.*) We reject this argument. The Contractual Liability coverage is provided as a Supplemental Coverage (as opposed to Principal Coverage) under the Frederick Policy. *See* Doc. No. 59–4, Pl.'s Exh. D, *Policy*, at p. 14. It provides a grant of coverage for "bodily injury" liability that is assumed under "any part of any . . . contract or agreement relating to the conduct of [the insured's] business . . . under which [the

insured] assume[s] tort liability to pay 'damages' because of 'bodily injury'." (*Id.*) While Dubinsky argues that he is owed coverage under this provision because Concept agreed to indemnify him for any bodily injury claims in the Builder's Agreement, we find no support for this assertion. *See* Dubinsky Br. at 4. The indemnity clause in the Builder's Agreement provides: "The builders shall indemnify the owner in respect of all claims, damages or expenses payable in consequence to any injury to any employee, workman, nominee, invitee, while in or upon the same premises . . . ." We find that the plain meaning of this clause only requires indemnification for liability imposed upon Dubinsky by Concept's negligence, not liability imposed upon Dubinsky for Dubinsky's own negligence. *See* Doc. No. 59–5, Pl. Exh. E, *Builder's Agreement*. As the court in *Ruzzi* explained, "if the parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language." *Ruzzi*, 588 A.2d at 4. We find that the Builder's Agreement fails to include the required "clear and unequivocal language" and as such, the indemnity clause can only be read to require Concept to indemnify Dubinsky for liability imposed upon him for Concept's negligence. Moreover, the underlying state complaint includes only claims of direct negligence against Dubinsky, not any claims seeking to impose liability upon Dubinsky vicariously for Concept's alleged negligence.[19] *Phila. Suit*, Compl. at ¶ 36(d). As such, we find that Dubinsky is not entitled to protection under the Contractual Liability Coverage.[20]

---

19. Specifically, Ahatov brought the following claims against all defendants, including Dubinsky, for: (1) a failure to carry adequate workers' compensation insurance, (2) negligence at the construction worksite, and (3) loss of consortium by Kabildjanova.

20. While Frederick also set out the exclusion (in the principal coverage) to Contractual Liability Coverage and the exception to the exclusion, we stop our analysis here. As Dubinsky has failed to establish his protection under the

## V. CONCLUSION

We grant summary judgment in favor of Frederick as to the claims arising out of the February 12, 2013 accident involving Ahatov. The Policy exclusions with respect to workers' compensation coverage and cross liability preclude these claims. We also conclude that Dubinsky has not only failed to establish the benefits as a named insured or additional insured under the Policy, but also failed to prove that the Policy's Contractual Liability Coverage covers him. For the reasons set out above, we entered our Order on March 31, 2017, granting Plaintiff's Motion for Summary Judgment. (Doc. No. 74.)

grant of coverage, it is unnecessary to evaluate these other provisions.