STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,
Appellant,

v.

William F. CHRISTIE, Jr., Zoey Christie, Christie Construction Company, William and Zoey Christie t/d/b/a Christie Construction Company, Kevin E. Atwood and Stone Construction Equipment, Inc., Appellee.

Superior Court of Pennsylvania.

Argued March 19, 2002.
Filed June 18, 2002.

Eric N. Anderson, Pittsburgh, for appellant.

David Nichols, Pittsburgh, for Stone Construction Equipment, Inc.

Before JOHNSON, BENDER and MONTEMURO *, JJ.

BENDER, J.

¶ 1 State Automobile Mutual Insurance Company (State Auto) appeals from an order entered in a declaratory judgment proceeding that determined that State Auto was obliged to defend and indemnify William F. Christie, Jr., Zoey Christie and Christie Construction Company in a tort action filed by Kevin E. Atwood (Atwood). We reverse.

¶ 2 William Christie, a self-employed general contractor t/d/b/a Christie Construction Company, (collectively Christie) performs commercial and residential construction. Atwood spoke with Christie about work availability, intending to submit a bid for roofing work. Christie informed Atwood that he only used subcontractors, and that Atwood could work as a "mason tender" on a kennel building project. Atwood agreed to work in that capacity.

¶ 3 On June 15, 1992, Atwood was injured while cleaning a cement machine, which was used to mix mortar.[1] He filed a Workers' Compensation (WC) claim petition seeking benefits. Christie filed an answer denying that Atwood was an employee. Christie acknowledged that he did not maintain WC coverage because he had no employees. No adjudication of the WC claim took place because Atwood withdrew the claim upon receipt of $8,000 from Christie. No release was signed. Subsequently, Atwood instituted a civil action against Christie and Stone, claiming that

he worked for Christie as a laborer. In the suit, Atwood sought damages for the injury he claims he suffered when cleaning the cement machine.

¶ 4 Christie maintained commercial liability insurance coverage under a policy from State Auto, which was in effect at the time that Atwood was injured. The policy provided liability insurance coverage for bodily injury, but excluded "[a]ny obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law." Record, Exhibit A, Insurance Policy at 15. The policy further stated that coverage did not apply to bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured." *Id.*

¶ 5 State Auto filed a declaratory judgment action to have the court determine whether Christie was entitled to coverage by State Auto under the general liability policy in effect at the time. State Auto claimed that the evidence proved that Atwood was an employee and, therefore, the exclusions in the policy dictated that no coverage was available under the policy. In addition to the above recitation of facts, the court also formulated the following findings concerning Atwood's employment status:

3. Since the mid–1980's, Christie has had no employees but utilizes subcontractors to perform his contract work.

. . . .

5. Christie informed Atwood that he only deals with subcontractors, not employees.

---

* Retired Justice assigned to Superior Court.

1. Stone Construction Equipment, Inc. (Stone) manufactured the machine involved in Atwood's injury and is one of the named defendants in the underlying tort action brought by Atwood.

6. Subsequently, Atwood informed Christie that he was willing to perform work for Christie as a subcontractor.

7. Atwood then joined Christie at a job site in Cranberry Township, Butler County, which involved the construction of a kennel.

8. While Atwood anticipated submitting a bid for roofing work, Christie intended to use Atwood's services for masonry work as well as roofing.

9. Atwood's initial work assignment was as a mason tender. His principle duties were to mix mortar and supply the mortar to Christie who was laying concrete block.

10. Atwood brought his own hammer and trowel. All other tools, equipment and supplies to mix the mortar were provided by Christie.

11. Atwood was paid a daily rate plus expenses by check issued weekly. There was no agreement between Atwood and Christie as to benefits such as vacation.

12. Atwood had signed federal forms which acknowledged his personal responsibility to pay federal taxes.

13. Christie did not withhold federal or state income taxes, social security taxes or medicare taxes from Atwood, did not pay any such taxes which would have been assessed against him as an employer, and did not file any tax forms as an employer. He listed Atwood as a subcontractor on his tax reports.

14. Atwood either rode to the job site with Christie or operated one of Christie's vehicles to the job site.

15. Atwood was not instructed by Christie as to when to start or end work each day. No overtime rate was paid to him for work exceeding a minimum hour day.

16. Christie did not give Atwood instructions as to where or how to mix the mortar except as to the ratio of sand to mortar.

17. Christie did not give Atwood instructions as to how to deliver the mortar mix to Christie nor as to a minimum quantity of mortar to mix.

18. Christie provided a power machine with which to mix the mortar as well as all gas and oil utilized in the machine.

Trial Court Opinion (T.C.O.), 8/8/01, at 1–3.

¶ 6 Based on the facts and the law as set forth in *Hammermill Paper Co. v. Rust Eng'g Co.*, 430 Pa. 365, 243 A.2d 389 (1968), and more recently in *Universal Am–Can, Ltd. V. Workers' Comp. Appeal Bd. (Minteer)*, 563 Pa. 480, 762 A.2d 328 (2000), the court concluded that Atwood was an independent subcontractor and not an employee at the time of his injury. Therefore, the court held that "State Auto had both the duty to defend and the duty to indemnify Christie in the tort action filed against Christie by Atwood." T.C.O., 8/8/01, at 6.

¶ 7 State Auto now appeals to this Court and presents the following issues for our review: (1) whether the trial court erred in determining that State Auto was required to defend and indemnify Christie in the underlying civil action filed by Atwood where the evidence established that Atwood was an employee and the general liability policy excluded coverage for bodily injury to employees, and (2) whether the trial court erred in allowing hearsay testimony concerning alleged communications from unidentified State Auto agents that occurred ten years earlier.

¶ 8 We begin by noting that:

Under the Declaratory Judgments Act, the trial court is empowered to declare the rights and obligations of the parties involved. "Our standard of review in a

declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law." We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

*Robson v. EMC Ins. Cos.,* 785 A.2d 507, 509 (Pa.Super.2001), *appeal denied,* 568 Pa. 703, 796 A.2d 984, 2002 Pa. Lexis 403 (2002) (quoting *Keystone Spray Equip., Inc. v. Regis Ins. Co.,* 767 A.2d 572, 574 (Pa.Super.2001)) (citations omitted).

■ ¶ 9 The central issue before this Court concerns Atwood's status, i.e., whether he was an employee or an independent contractor at the time he was injured. If we conclude that Atwood was Christie's employee, then State Auto is relieved of the obligation to defend and indemnify Christie pursuant to the express terms of the insurance policy. If we conclude that Atwood's status is that of an independent contractor, the exclusions in the policy are not applicable, and State Auto is required to defend and indemnify Christie.

■ ¶ 10 "[A] determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case." *Universal Am–Can,* 762 A.2d at 330–31. When deciding this issue, the criteria set forth in *Hammermill Paper* are applicable and are to be followed by a reviewing court. The Supreme Court in *Hammermill Paper* stated that:

> While no hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, certain guidelines have been established and certain factors are required to be taken into consideration:
>
> "Control of manner work is to be done; responsibility for result only;

terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time."

*Id.* at 392 (quoting *Stepp v. Renn,* 184 Pa.Super. 634, 135 A.2d 794, 796 (1957)).

> Whether some or all of these factors exist in any given situation is not controlling. Further, while each factor is relevant, there are certain guidelines that have been elevated to be dominant considerations.... **[O]ur case law confirms, that control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status.**

*Universal Am–Can,* 762 A.2d at 333 (emphasis added).

¶ 11 State Auto extensively discusses the evidence that addresses the employee/independent contractor issue. It cites Christie's and Atwood's testimony, referencing payment of wages on a daily basis rather than per job, travel to and from the job site in one of Christie's vehicles, mixing the cement to Christie's specifications, and bringing the mortar to the location where Christie was laying concrete block. The testimony also revealed that Christie instructed Atwood in how to clean the mixer at the end of the workday, and that Christie supplied most of the tools. State Auto also references the WC petition filed by Atwood in which he claimed to be Christie's employee and which was resolved when Christie paid Atwood $8,000. Additionally, State Auto points to Atwood's testimony acknowledging that he did not

submit a bid for the cement work, that he would only get paid for the actual hours worked, that he could be dismissed if no work was available and that he would be reimbursed for any expenses.

¶ 12 To counter the trial court's determination that any control by Christie amounted to control of the result and not the means to accomplish the job itself, State Auto points out that the trial court found that mixing mortar requires no skill. Therefore, State Auto contends that instructions on how to mix the cement are in fact the same as directing the result. Furthermore, because Atwood was required to keep up with Christie's need for mortar, State Auto asserts that Christie directed the speed of Atwood's performance.

¶ 13 State Auto acknowledges that the agreement by the parties to create a specific type of working relationship is a factor here that supports independent contractor status. Additionally, the agreement to issue a Form 1099 rather than to withhold federal and state income taxes, social security and medicare payments also supports a conclusion that Atwood worked as an independent contractor. However, State Auto contends that these factors are not dispositive and that the overall picture, in particular the control factor, dictate a conclusion that Atwood's status was that of an employee.

¶ 14 Having reviewed the record, we conclude that the evidence produced in this case is insufficient to establish that Atwood was an independent contractor. An un-

skilled job, such as a mason tender, is not the type of distinct occupation contemplated in the *Hammermill* factors when compared to a skilled position, such as an electrician, plumber or mason. Moreover, regardless of the agreement between Atwood and Christie, the most compelling factor, the control exerted by Christie over Atwood's daily duties, compels the outcome here.[2]

¶ 15 Accordingly, we conclude that the trial court erred as a matter of law when it found Atwood to be an independent contractor. As a result of our conclusion as to Atwood's status, it follows that State Auto does not have the duty to defend or indemnify Christie in the underlying tort action.[3]

¶ 16 Order **REVERSED.**

---

**2.** We also note that although Atwood joins Christie and Stone in the brief to this Court contending that he acted as an independent contractor, his complaint in the underlying action asserts:

> 7. At all times material hereto, Plaintiff Kevin E. Atwood was employed as a laborer for Defendants, Christie.
> 8. On or about June 15, 1992 at approximately 3:30 p.m. Plaintiff Kevin E. Atwood

was working with and around the subject cement mixer at the insistence of and during the normal course and within the scope of his duties with Defendant Christie.
Atwood Complaint at 3.

**3.** Having resolved the issue of Atwood's employment status in State Auto's favor, we need not reach its hearsay issue.