J-A01040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: SLETTEN FAMILY TRUST, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: KELLY M. DAHL; CHAD SLETTEN;  J. JOSEPH SLETTEN; DANIEL SLETTEN, AND CHRIS SLETTEN | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2289 EDA 2018 |

Appeal from the Order Entered July 6, 2018
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2017-X2838

BEFORE:  OTT, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MAY 06, 2019**

Kelly M. Dahl, Chad Sletten, J. Joseph Sletten, Daniel Sletten, and Chris Sletten ("Sletten Children") appeal from the order granting Kathryn Sletten's Petition for Declaratory Judgment and finding the Sletten Family Trust U.D.T. dated May 15, 1998 ("May Trust") to be a valid trust. We affirm.

Kathryn, the trustee of the May Trust, filed a first and intermediate account of the May Trust and a Petition for Adjudication. The property contained in the May Trust was a piece of real estate located on Summer Ridge Drive in Lansdale, Pennsylvania, ("Lansdale property") and $10.00 (collectively, "Trust Property"). The Sletten Children filed Objections to the Account and Petition for Adjudication, including an objection challenging the validity of the May Trust. The Sletten Children claimed a document entitled the Sletten Family Trust U.D.T., created by an instrument dated April ____, 1998, ("April Trust") was the valid Sletten Family Trust. Kathryn filed an

Answer to the Objections and a Petition for Declaratory Judgment asking the court to determine the validity of the May Trust. The court held a hearing on the petition.

The trial court set forth the following factual history:

> Idamarie Sletten ("Settlor") had two children, son John Sletten and an unnamed daughter, with whom she resided in West Virginia during the time of the trust creation in 1998. Settlor and her husband, Warren Sletten, jointly purchased a house at 138 Summer Ridge Drive, Lansdale, PA in 1995 ("Summer Ridge property"). When Warren died on September 21, 1996, settlor became the sole owner of the property.
>
> . . .
>
> After discussions with Attorney David Ennis, Idamarie Sletten executed a deed of property conveying the Summer Ridge property to the Sletten Family Trust on March 3, 1998.
>
> Thereafter, on March 24, 1998, Attorney Ennis sent a fax to Irving Cooper, Esquire with directions for him to draft the Sletten Family Trust. The directions stated that the purpose of this Family Trust is to protect the Summer Ridge property from an IRS lien which had been filed in Montgomery County, Pennsylvania against the settlor's son, John A. Sletten. This fax also stated that the intent of the trust is to give John A. Sletten and his wife, Kathryn J. Sletten, a life interest in the property with the remainder to the children of John A. Sletten.
>
> On April 8, 1998, Attorney Ennis submitted the Sletten Family Trust document to Settlor along with a cover letter that directed her to sign the document and to do so in the presence of a notary. Settlor returned the signed document, dated April 17, 1998, to Attorney Ennis as directed (hereinafter referred to as the "April Trust").[1]

---

[1] The April Trust that John returned to Ennis was torn.

- 2 -

On April 23, 1998, Attorney Ennis sent the April Trust, signed by Idamarie Sletten, to John Sletten with a directive that he and his wife execute the document as co-trustees of the trust.

On April 28, 1998, John Sletten returned the April Trust, which only bore his signature, to Attorney Ennis. Along with the April Trust, John sent a letter with several directives to make changes to the document, including naming him the sole trustee rather than being a co-trustee with his wife, who refused to sign the April Trust.[2]

Approximately one week later, on May 5, 1998, Attorney Ennis sent a letter to John and Kathryn Sletten noting that he had made changes to the April Trust as a result of his conversation with Kathryn. Along with this letter was the newly drafted Sletten Family Trust.2 The couple is directed by Attorney Ennis to sign the new draft and return it to him, after which he will send that document to Idamarie Sletten for her signature.

> 2 The change from the April Trust addresses the disposition of the trust assets in the event of divorce or both of their deaths.

This draft is never signed by John and Kathryn. Presumably, it was returned without signature with further directives for more changes as a short time later, Attorney Ennis sent John and Kathryn another draft of the Sletten Family Trust on May 14, 1998. The cover letter that accompanied this draft of the Sletten Family Trust directed the couple to sign the trust document and then send it to Idamarie for her signature and notary.

This draft of the Trust Agreement was fully executed by all parties on May 15, 1998 (hereinafter referred to as the "May Trust"). The May Trust was later recorded on June 8, 1998 with the Deed of Property dated March 3, 1998, with Office of the Montgomery County Recorder of Deeds.

---

2 Although the trial court found Kathryn refused to sign the April Trust, Kathryn testified that she had not seen the document prior to litigation. N.T., 3/28/18, at 61.

- 3 -

Trial Court Opinion, filed July 6, 2018, at 1-3 (internal citations and a footnote omitted).

To this recitation of facts, we add that the house was in Settlor's name and Settlor and her husband had made the down payment for the home. Declaratory Relief Petition at ¶ 8. However, Kathryn testified that she and John resided in the home since it was built and made the mortgage payments for the home. N.T., 3/28/18, at 53, 55, 60. Under the terms of the April Trust, John and Kathryn had life estates in the Trust Property and, upon termination of the life estates, the Trust Property would be distributed to the Sletten Children. The Sletten Family Trust U.D.T. dated April ____, 1998 ("April Trust"). Under the terms of the May Trust, John and Kathryn had life estates in the Trust Property, and, upon termination of the life estates, $80,000 would be distributed to the Sletten Children. The Sletten Family Trust U.D.T. dated May 15, 1998 ("May Trust"). Any amount remaining after the $80,000 would be divided into two shares, with one share divided among the Sletten Children and the second share divided among Kathryn's children. *Id.*

Further, although Ennis did not recall speaking with Settlor, he stated he believed she was competent and "knew what she was doing" when she signed the May Trust. N.T., 3/28/18, at 41-42. He also stated that, "in [his] opinion, [they] were working towards a document that was signed by [Settlor], John and Kathryn. That was the ultimate goal." *Id.* at 44.

The trial court found that the May Trust was the valid trust. It reasoned that the documents admitted at trial created a timeline. It noted the property

- 4 -

deed executed in March 1998 stated the property transfer was a "tax exempt transfer from parent to children and grandchildren," and that both the April Trust and the May Trust relay benefits to Settlor's son and daughter-in-law and to John's children. It referenced the first paragraph of the April Trust, which stated: "This irrevocable inter-vivos trust made and entered into this ____ day of April, 1998, by and between Idamarie Sletten . . . and John A. Sletten and Kathryn L. Sletten . . . ." *Id.* at 4. The document identifies the trustee "collectively and jointly" as John and Kathryn. *Id.* The court concluded that "[g]iven this language, . . . Kathryn's signature was necessary to make the April 1998 deed of trust a valid trust." *Id.* Because Kathryn did not sign it, it was not a valid and enforceable trust. *Id.*

The court further found that, even if Kathryn's signature was not required, it could not "ignore the series of correspondence with the attorney which ultimately culminated in the fully executed May Trust." *Id.* at 4-5. It noted that it was unclear why Settlor would sign the May Trust if she intended the April Trust to be the Sletten Family Trust. *Id.* The court further noted there was no evidence that Settlor's notarized signature on the May Trust was fraudulent or fraudulently obtained. *Id.* The court concluded that "[t]he totality of the circumstances in this matter is paramount and indicative of the Settlor's intent. Attorney Ennis' consistent, credible testimony regarding multiple revisions of trust documents confirms the process where in the relevant parties (settlor, John and Kathryn) resolve their concerns and reach

agreement as evidenced by the fully executed deed of trust dated May 15,
1998." *Id.*

The Sletten Children filed a motion to reconsider, which the trial court
denied. They also filed a timely notice of appeal.

The Sletten Children raise the following issues:

> A. Did the court err in failing to find that the April
> irrevocable trust was valid and controlling where all
> statutory requirements for the creation of a valid irrevocable
> trust had been met?
>
> B. Did the court err in making findings that were beyond the
> scope of the March 28, 2018 hearing where the hearing was
> specifically limited by the court to determine the intent of
> the settlor?
>
> C. Did the court make a number of key errors that are
> unsupported by the record and included in the court's
> findings of fact which affect the basis of the court's opinion?

Sletten Children's Br. at 4 (some capitalization and suggested answers
omitted).

The Sletten Children first argue that the April 1998 Trust is the valid
trust, as it meets the requirements of 20 Pa.C.S.A. § 7732[3] and was never

---

[3] 20 Pa.C.S.A.§ 7732(a) provides:

> **(a) Requirements.--**A trust is created only if:
>
> (1) the settlor has capacity to create a trust;
>
> (2) the settlor signs a writing that indicates an
> intention to create the trust and contains provisions of
> the trust;
>
> (3) the trust has a definite beneficiary . . . [;]

legally revoked. They claim the documents show the Settlor's intent was to create a life estate for John and Kathryn, with the property passing to the Sletten Children after the life estates, which was the distribution scheme contained in the April Trust. They claim Kathryn's signature was not needed to create a valid trust. They further note that there was no communication between Ennis and Settlor after the April Trust. The Sletten Children argue the April Trust was not a draft, noting that: the letter enclosing the trust did not call the document a "draft"; the Settlor signed and notarized the document; Ennis sent the signed and notarized document to John and Kathryn for their signatures; and, when John wrote Ennis and returned the document, he requested a change to the trustee, but also said this document would be fine even though torn. They note that a trust will not fail for the lack of a trustee.

We review orders in declaratory judgment actions "to determin[e] whether the trial court clearly abused its discretion or committed an error of law." ***Commerce Bank/Harrisburg, N.A. v. Kessler***, 46 A.3d 724, 729 (Pa.Super. 2012) (quoting ***State Automobile Mut. Ins. Co. v. Christie***, 802 A.2d 625, 627-28 (Pa.Super. 2002)). "We may not substitute our judgment

---

(4) the trustee has duties to perform; and

(5) the same person is not the sole trustee and sole beneficiary of the trust.

20 Pa.C.S.A. § 7732(a).

for that of the trial court if the court's determination is supported by the evidence." *Id.* (quoting *Christie*, 802 A.2d at 627-28).

When interpreting a trust, courts have stated that "the polestar in every trust is the settlor's intent and that intent must prevail." *In re Trust of Hirt*, 832 A.2d 438, 448 (Pa.Super. 2003) (quoting *In re Benson*, 615 A.2d 792, 794 (Pa.Super. 1992)). When determining the settlor's intent, courts must consider "(a) all the language contained in the four corners of his will and (b) his scheme of distribution . . . (c) the circumstances surrounding him at the time he made his will and (d) the existing facts." *Id.* (quoting *In re McFadden*, 705 A.2d 930, 931 (Pa.Super. 1998)).

The trial court did not abuse its discretion or err in finding the April 1998 Trust was a draft, and that the May 1998 Trust was the valid Sletten Family Trust. The court determined the Settlor's intent not only from her signature on the documents, but also from the wording of the documents, and the circumstances and facts that surrounded the execution of the documents. Settlor signed and notarized the May Trust and the wording of the Trust document contemplated an agreement between Settlor, John and Kathryn. Further, Ennis had subsequent conversations and communications which established that the April Trust did not capture Settlor's intent, and Ennis testified he believed Settlor knew what she was doing.

We also note that the evidence established that Settlor and her husband had invested a down payment for the Lansdale property, but that John and Kathryn lived in the property from the time of purchase and John and Kathryn

paid the mortgage on the property. Such evidence supports a finding that Settlor intended that only her initial investment be distributed to the Sletten Children.

We conclude the trial court's findings are supported by the record, and it did not abuse its discretion or err as a matter of law in finding the May Trust valid.

The Sletten Children next contend the court erred in making findings that were beyond the scope of the hearing, as the hearing was limited to the determination of the intent of the settlor.

The Sletten Children cite the court's finding that there was no evidence that Settlor's signature on the May Trust was fraudulent or fraudulently obtained. They claim this was incorrect, as there was no evidence that the changes made to the document were explained to Settlor. Further, they claim the hearing was "on intent only." Sletten Children's Br. at 16. The Sletten Children had pled in their answer and new matter numerous problems that went beyond the four corners of the document and intent of the Settlor, including unclean hands. They claim the hearing was limited to intent of the Settlor and therefore they did not have an opportunity to present their defenses at the hearing.

The Sletten Children cite to no place in the record where the court limited the hearing or precluded them from presenting evidence they wished to present. Further, we have found no such limitation. Although the trial court noted that it was looking to determine intent, N.T., 3/28/18, at 14, 41, 55,

we find no location where it said it would not consider evidence of unclean hands or other defenses.

As to the Sletten Children's claim that the lack of evidence of communication of the changes to Settlor established that the Settlor's signature was fraudulent or fraudulently obtained, we disagree. There was no written communication explaining the changes to Settlor. This, however, does not establish she was unaware of the changes. Rather, the court could determine that the signature was not fraudulently obtained based on the evidence presented, which included the fully executed May Trust, which included Settlor's notarized signature, and Ennis' testimony that he believed Settlor knew what she was doing and that the May Trust captured the intent of Settlor, John, and Kathryn.

In their last issue, the Sletten Children claim the court made factual findings that were not supported by the record, including facts that impacted its legal conclusions.

First, the Sletten Children claim that the deed states it is a "tax exempt transfer from parent to children and grandchildren," but the court failed to state that Kathryn's children would be subject to a transfer tax, as they are not children or grandchildren of Settlor. Sletten Children's Br. at 9. Second, they note that there is no evidence showing that the attorney had contact with Settlor after receipt of the April Trust, and the trial court "apparently has no issue with [the] failure to discuss or explain or contact his client after April 3, 1998." *Id.* at 18. Third, the Sletten Children cite the court's finding that

Kathryn refused to sign the April Trust, even though she testified she did not see the document. *Id.* Fourth, the Sletten Children challenge the court's finding that there was a "process wherein the relevant parties . . . resolve their concerns and reach agreement as evidenced by the fully executed deed of trust dated May 15, 1998," *id.* at 19, noting that there was no evidence the changes were communicated to Settlor.

The Sletten Children disagree with the trial court's findings, and believe the court's findings are incorrect absent more evidence. We find these claims lack merit. The absence of a discussion of tax implications does not alter our conclusion that the trial court did not err when determining Settlor's intent. Further, as discussed above, the trial court's conclusions regarding Settlor's signature is supported by the record, even though Ennis did not recall communicating with Settlor after the April Trust. In addition, Kathryn's testimony that she did not see the April Trust does not make the court's finding that the April Trust was a draft unsupported. Rather, as discussed above, the evidence supported the finding that the April Trust was a draft. This is true regardless whether Kathryn knew of the April Trust. In sum, we do not agree with the Sletten Children's characterization of evidence presented, find the record supports the trial court's conclusions, and decline to find that the lack of specific evidence makes the court's conclusions any less sound.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/6/19</u>